ORIGINAL
D+F
c/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WARREN CHASE,

              Plaintiffs,                **MEMORANDUM AND ORDER**
-against-                       Case No. CV-06-6709 (FB)

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

              Defendant.
-------------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                             *For the Defendant:*
CHRISTOPHER P. FOLEY, ESQ.          FRED M. KNOPF, ESQ.
McCormick, Dunne & Foley               EMILY A. HAYES, ESQ.
61 Broadway                                   MATTHEW D. DONOVAN, ESQ.
Suite 2100                                     Wilson, Elser, Moskowitz,
New York, NY 10006-2767              Edelman & Dicker LLP
                                                      3 Gannett Drive
                                                      White Plains, NY 10604

**BLOCK, Senior District Judge:**

        Plaintiff Warren Chase ("Chase") filed a complaint against The Prudential Insurance Company of America ("Prudential") in the Supreme Court of the State of New York, County of Kings, claiming that (1) Prudential, which provided Chase a long-term disability insurance plan (the "Plan") through his former employer, Chemonics International, Inc. ("Chemonics"), breached its contract with Chase by terminating his benefits under the Plan, and (2) Prudential violated New York's General Business Law § 349, which prohibits consumer fraud, by representing to Chase that any challenge to the Plan was controlled by the Employee Retirement Income Security Act of 1974 ("ERISA"). The case was removed to this Court on Prudential's application on the ground that the Plan

is governed by ERISA; therefore, ERISA provides the exclusive remedy for claims arising under the plan and preempts any state law claim related to the Plan. *See* 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *see also Kolasinski v. Cigna Healthplan of CT, Inc.*, 163 F.3d 148, 149 (2d Cir. 1998) ("ERISA preempts any state law claims that the plaintiff may have because the state law claims directly 'relate to' the plan, and Congress intended for ERISA to supercede all state laws that relate to employee benefit plans.").

Prudential moves to dismiss the complaint pursuant to Rule 12(b)(6), arguing that Chase failed to allege any claims pursuant to ERISA. Chase opposes the motion, asserting that even if the Plan qualifies as an ERISA employee benefit plan, it falls within the safe harbor provision of 29 C.F.R. § 2510.3-1(j), and thus is not regulated by ERISA; therefore, Chase has moved to remand. Alternatively, Chase moves for leave to amend if the Court determines that the Plan is governed by ERISA, so that he may assert ERISA claims; Prudential does not oppose Chase's motion to amend.

The Court determines that the Plan is indeed governed by ERISA; therefore, it grants Prudential's 12(b)(6) motion to dismiss, denies Chase's motion to remand, and grants Chase's alternative motion to amend his complaint.

I

The following facts are drawn from the complaint and the document describing the Plan ("Plan Document"), entitled "Chemonics International Inc. Class II Short Term Disability Coverage [/] Long Term Disability Coverage," which was presented

2

to the Court for the first time as an exhibit annexed to Prudential's motion; the Court may consider the Plan Document in deciding Prudential's 12(b)(6) motion because Chase relies on the document and it is integral to the complaint. *See Automated Salvage Transp. v. Wheelabrator Envtl. Sys.*, 155 F.3d 59, 67 (2d Cir. 1998) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (citation, quotation marks and alteration omitted)).

Chase was employed by Chemonics. Compl. ¶ 8. Chemonics contracted with Prudential to provide, *inter alia*, a long term disability insurance plan to all Chemonics employees except those employed as senior managers. Plan Document at 2. The Plan is defined as an "Employee Welfare Benefit Plan," *id.* at 42, that is "underwritten by [Prudential and] provides insured benefits under [the policyholder's] Employer's ERISA plan(s)." *Id.* at 43. Chemonics is identified as the Plan's "Contract Holder," *id.* at 2, the "Plan Sponsor," *id.* at 42, the "Plan Administrator," *id.*, and the Plan's "Agent for Service of Legal Process." *Id.* The Plan Document specifies that employees must pay for their own coverage if they elect to enroll for long term disability insurance, *id.* at 20; if an employee enrolls and subsequently becomes disabled, he or she is entitled to receive a monthly benefit of 60% of monthly earnings. *Id.* at 2.

Chase elected to enroll for long term disability insurance, and was covered

3

by the policy when he became disabled in July 2005. Compl. ¶¶ 7, 8. Chase submitted a claim under the Plan, which was initially approved. Compl. ¶ 8. In May 2006, Chase received a letter advising him that (1) his benefits were being terminated effective June 1, 2006, Compl. ¶ 10; (2) if he intended to challenge the termination in court, he must first file an administrative appeal with Prudential, Compl. ¶ 11; and (3) any court challenge would be controlled by ERISA. Compl. ¶ 12. Chase filed an administrative appeal, which was denied on June 14, 2006, Compl. ¶ 13; he subsequently filed a second appeal, which was denied on September 1, 2006. Compl. ¶ 14. On November 6, 2006, he filed this suit against Prudential.

II

Although it does not appear that the Chase disputes that the Plan is an ERISA-regulated employee welfare benefit plan, the Court nonetheless addresses the issue before turning to ERISA's safe harbor provision since it is integral to the Court's remand jurisdiction.

ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program which . . . is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, [or] disability. . . ." 29 U.S.C. § 1002(1). A "'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can

ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir. 1994).

The Plan Document specifies that (1) the Plan will provide benefits, in the amount of 60% of the employee's monthly earnings, in the event of long-term disability; (2) all Chemonics employees, with the exception of senior management employees, can enroll for benefits; and (3) employees must pay for their own coverage. It also sets forth a detailed claims procedure. A "reasonable person" would conclude that this is an ERISA plan in accordance with the standard set forth in *Grimo*.

### III

Though the Plan constitutes an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1), it may nevertheless be excluded from ERISA if it falls within the ambit of 29 C.F.R. § 2510.3-1(j), which is commonly referred to as the ERISA "safe harbor provision." Pursuant to that regulation, the term "employee welfare benefit plan" does not include

> a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, *without endorsing*

> *the program*, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. 2510.3-1(j) (emphasis added). "An endorsement within the meaning of section 2510.3-1(j)(3) occurs if the employer . . . engages in activities that would lead an employee or member reasonably to conclude that the program is part of a benefit arrangement established or maintained by the employer . . . ." Dep't of Labor Advisory Opinion No. 94-24A, 1994 WL 317906. To be "excluded from ERISA coverage," a program "[must] meet each of the regulation's four criteria." *Grimo* at 152.

Chase contends that the Plan falls within the ERISA exclusion defined by 29 C.F.R. § 2510.3-1(j) because (1) Chemonics received no consideration in the form of cash or otherwise in connection with the Plan, Compl. at 6, (2) Chemonics did not endorse the Plan as it "had no function" with respect to the Plan "aside from permitting Prudential to publicize the policy to its employees, collecting premium through payroll deductions and remitting same to Prudential," *id.* at 5, (3) Chemonics made no contributions to the policy, *id.* at 5; and (4) participation in the program was completely voluntary. *Id.* at 6. Prudential concedes the first and fourth points, but argues that Chemonics both endorsed the plan and made contributions to it. *See* Mem. of Law in Support of Def's Mot. to Dismiss at 5.

6

Although Chase's factual allegation that Chemonics made contributions to the Plan would suffice, without more, to defeat Prudential's 12(b)(6) motion, *see* Compl. ¶ 5; Mem of Law in Opp. to Def's Mot. to Dismiss at 4-5, it is here irrelevant, since the Plan document, which is properly before the Court, shows that the Plan was indeed endorsed by Chemonics. The cover page bears Chemonics' name, and identifies the document as providing information concerning short- and long term disability coverage. *See* Plan Document at unnumbered cover page. The "Benefit Highlights" section identifies Chemonics as the "Contract Holder" in connection with the Plan, *id.* at 2; it further identifies Chemonics as the "Plan Sponsor," "Plan Administrator," and "Agent of Service for Legal Process." *Id.* at 42. The Plan thus makes clear that it is part of Chemonics' benefit package, and that Chemonics is in some way involved in the operation of the Plan. "'[A]n employer will be said to have endorsed a program . . . if, in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude . . . that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package.'" *Sanfilippo v. Provident Life and Cas. Ins. Co.*, 178 F. Supp. 2d 450, 456 (S.D.N.Y. 2002) (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1135 (1st Cir. 1995)). Because Chemonics has endorsed the Plan, it does not fall within the employee welfare benefits plan exclusion defined by 29 C.F.R. § 2510.3-1(j).

## CONCLUSION

As the Plan constitutes an employee welfare benefit plan subject to ERISA and is not otherwise excluded from ERISA, the complaint is dismissed for failure to allege claims pursuant to ERISA; Chase's motion to remand is denied; and Chase is granted 30 days in which to amend his complaint to assert ERISA claims.

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 13, 2008